UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:
PRINCETON HOMES, INC.                    CASE NO. 10-31773-EPK
                                         CHAPTER 11

_____ Debtor        /

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTOR TO SELL HOMES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (B) ESTABLISHING ESCROW FOR POST-PETITION CUSTOMER DEPOSITS TO PURCHASE HOMES, AND (C)ESTABLISHING PROCEDURES FOR THE RESOLUTION AND PAYMENT OF OPERATIONAL LIEN CLAIMS

PRINCETON HOMES, INC., the Debtor and Debtor-in-Possession (the "Debtor"), through counsel, move for the entry of interim and final orders, substantially in the form annexed hereto as Exhibit "B", (a) authorizing the Debtor to continue to close on sales of homes currently under contract and to continue to contract for and complete the construction and sale of homes to customers in the ordinary course of business, (b) authorizing the Debtor to establish a segregated escrow account for post-petition customer deposits to purchase homes, (c) authorizing the Debtor to honor certain prepetition contract obligations to homebuyers, including, where appropriate in the Debtor's business judgment and not inconsistent with past business practices, to refund deposits, (d) providing that the sale of homes to the Debtor's customers shall be free and clear of all liens, claims and encumbrances and other interests, (e) authorizing, but not directing the Debtor, in their sole discretion or as ordered by the Court pursuant to the established procedures, to satisfy lien claims out of home sales, (f) establishing procedures for resolving disputed lien claims, (g) authorizing the Debtor to use proceeds of the home sales subject to the lien procedures and as permitted with respect to the authority of the Debtor to use cash collateral, (h)

- 1 -

authorizing the Debtor to proceed immediately with the sale of homes and establishment of the lien procedures notwithstanding the possible applicability of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (i) authorizing financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing.

## JURISDICTION AND VENUE

1.      On July 28, 2010 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor continues to operate its business and manage its assets as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1134. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2).

4.      The Debtor is a Florida Corporation that conducts homebuilding operations in the State of Florida, and more particularly in St. Lucie County, Florida. The Debtor has an office staffed by employees located in Palm Beach County and St. Lucie County and the Debtor is currently building homes and owns real estate and personal property locations in St. Lucie County. Accordingly, venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are sections 105(a), 363(b), (c) and (f), 506(b), 541, 546(b) 1107 and 1008 of the Bankruptcy Code, Bankruptcy Rule 6003 and Local Rule 9013-1(K).

6.      No trustee or examiner has been appoint in this case, nor has an official

committee of unsecured creditors been established.

**BASIS FOR RELIEF**

7.      The Debtor contracts in the ordinary course of its business with individuals for the sale, and sometimes to-order customers and continue to contract for and complete the construction and sale of homes, including by transferring title to homebuyers "free and clear" of liens, is the essence of the Debtor's business and must continue without any interruption if there is to be a successful reorganization.

A.      **Contracts to Sell Homes**

8.      In the ordinary course of business, the Debtor contracts with homebuyers to build and close on the sale of homes in St. Lucie County, Florida (the "Sales Contracts"). As of the Petition Date, the Debtor had no prepetition Sale Contracts. The Debtor believes that it is authorized to continue to sell homes in the ordinary course of business without the need for a court order. In an exercise of prudence and to provide clarity to the Debtor's customers and title insurers, however, the Debtor seeks authority to close on the sale of homes pursuant to the Sales Contracts, including prepetition Sale Contracts, once construction is finished and other conditions for closing are satisfied (e.g., passing building inspections). In this regard, the Debtor must be able to transfer title to homebuyers free and clear of all liens and interests in such property, without the necessity of seeking and obtaining a court order for each individual sale. Indeed, requiring the Debtor to seek individual court orders approving the sale of homes under the Sales Contract would be particularly burdensome for all parties in interest in light of the fact that, in any given day, there could be multiple closings.

9.      The terms of the Sales Contracts vary. In most instances, the Sales Contract requires a prospective homebuyer to provide the Debtor with a deposit on the purchase price (a

"Deposit"). If the Debtor is unable to close on the sale of a particular home, the Debtor may be obligated under the terms of the applicable Sales Contract or by law to refund a Deposit. There are no prepetition Deposits.

10.    In the ordinary course of business, Deposits received are typically deposited into a general operating account. In connection with the filing of the Chapter 11, however, the Debtor proposes that all Deposits received on account of postpetition Sales Contracts be maintained in an escrow account held by a non-debtor escrow agent ("Postpetition Deposit Escrow"). The Debtor asserts the Postpetition Deposit Escrow is necessary to ensure that prospective homebuyers' postpetition Deposits (which do not become the Debtor's property until the closing on a home) will remain non-estate property and not be encumbered by any pre- or postpetition liens or claims against the Debtor's properties. Indeed, the Debtor submits that the Postpetition Deposit Escrow is necessary to provide prospective homebuyers with comfort and confidence that such customers' Deposits – to the extent they are refundable by the Debtor—will not be affected by the bankruptcy.

**B.    The Lien Claimants**

(i)    Operational Lien Claimants

11.    As part of its homebuilding operations, the Debtor relies on, and routinely contracts with, a number of third parties (the "Operational Lien Claimants") who may be able to assert liens against the Debtor's property to secure payment for certain prepetition goods and services delivered to the Debtors or for other prepetition claims (the "Operations Lien Claims").

12.    Specifically, many of the Operational Lien Claimants may have a right under applicable state law to assert and perfect tax, construction, materialman's, mechanics' or other

- 4 -

liens (the Operational Liens")[1], which attach to the Debtor's unsold homes and related real property.   The Operational Liens may attach simply by virtue of the Operational Lien Claimant commencing work, or more stringent notice and perfection requirements.  In any event, pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting Operational Liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.  Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers are "subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ."  11 U.S.C. § 546(b)(1)(A).  Therefore, notwithstanding the automatic stay imposed by Section 362 of the Bankruptcy Code, Operational Lien Claimants may be entitled to assert and perfect Operational Liens against the Debtor's property during this case with respect to their prepetition claims against the Debtor.

13.    The Debtor's title insurance agents and underwriters (collectively, the "Title Insurers") will not proceed with home closings unless the Debtor provides assurance that the Operational Liens will not cloud title to the homes.  The Debtor anticipates that customers and their lenders would have similar concerns.  The Debtor historically has been able to sell homes without clearing each and every Operational Lien Claim because its Title Insurers accepted Princeton Homes' agreement to indemnify them from and against any valid Operational Lien Claims (with the Debtor satisfying those claims post-closing out of sale proceeds).  The Title Insurers have indicated, however, that if Princeton Homes is in Chapter 11, they will be unwilling to accept such an indemnity going forward.  Accordingly, the Debtor requires an order

---

[1] "Operational Liens" addressed by this motion include any and all liens that may be asserted against the Debtor's property in connection with operations, including, without limitation, any judgment liens obtained against the Debtor and any liens that may be asserted by taxing authorities pursuant to any federal, state, or local statute or regulation.  Operational Liens do not include liens arising under the Debtor's prepetition secured financing facilities.

the Court authorizing it to sell homes in the ordinary course of business free and clear of all Operational Liens, with such liens attaching to the proceeds of each sale in accordance with the proposed procedures set forth below.

(ii)    Lender Liens

14.    the Debtor's properties are also subject to liens arising from the Debtor's prepetition secured financing facilities.  Specifically, the Debtor and Comerica Bank (the "First Lien Lenders") are parties to that certain Construction Loan Agreement dated June 19, 2007, as modified by the Construction Loan Agreement Modification Agreement dated February 13, 2009 (collectively, "Loan Agreement"), that certain Tenth Mortgage Modification Agreement ("Mortgage") dated February 13, 2009, and that certain Second Amended and Restated Revolving Promissory Note ("Note")dated February 13, 2009 (collectively, "Loan Documents") by and between Princeton Homes, Inc. and Comerica Bank (the "First Lien Agreement").  The Debtor's indebtedness under the First Lien Agreement is secured by perfected, valid and biding first priority liens, mortgages, deeds of trust, deeds to secure debt and security interests in seven (7) unsold homes known as Lots 113, 114, 147, 149, 151, 154, 159 of St Andrews Townhomes (the "Mortgaged Properties").

15.    The Debtor and Princeton Partners, LLC ("Partners" and together with the First Lien Lenders, the "Lenders") are party to that certain Development Loan Agreement dated December 30, 2005, as modified by the Development Loan Agreement Modification Agreement dated February 13, 2009 (collectively, "Loan Agreement"), that certain Mortgage Security Agreement and Assignment of Leases, Rents, as modified by the Mortgage Modification Agreement dated February 13, 2009 (collectively, "Mortgage"), that certain Amended, Restated and Consolidated Promissory Note ("Note" dated February 13, 2009, and certain ISDA Master

Agreement dated December 30, 2005 ("Swap Agreement".) collectively "Loan Documents") by and between Princeton Partners, LLC ("Borrower") and Comerica Bank.

16.     Pursuant to the prepetition credit agreements with the Lender, the Debtor is authorized to sell homes in the ordinary course to its customers.

17.     By this Motion, the Debtor requests authority to sell homes free and clear of the Lender Liens, consistent with their prepetition agreements, with the Lender Liens to attach to the proceeds of such sales in the Debtor's possession to the extent required by the applicable credit agreements.

C.     **The Proposed Lien Procedures**

18.     The Debtor submits that the proposed lien procedures set forth below will facilitate the Debtor's ability to continue to conduct its business (which is necessary to preserve value in this case) while protecting the interests of all affected parties.

19.     On information and belief, the Debtor submits that the sale proceeds of homes may not be sufficient to satisfy any portion of the Operation Lien Claims.  The Debtor believes that the sale proceeds  the Debtor will receive on account of the Sales Contracts, after deduction of ordinary costs (e.g., broker commissions and costs of sale) ( the "Gross Sale Proceeds") will likely be fully encumbered by the Lender Liens.

20.     Notwithstanding the Debtor's belief that the Gross Sale Proceeds on account of Sales Contracts may be insufficient to satisfy any portion of the Operational Lien Claims, the Debtor submits that such Operational Lien Claims may be partially or wholly satisfied to the extent there are proceeds remaining after payment of the Lender Liens (in accordance with prepetition agreements and the ordinary costs of a home sale (collectively, the "Net Sale Proceeds").

21.     To protect the rights of the Operational Lien Claimants with valid and enforceable Operational Liens in the available Net Sale Proceeds, the Debtor proposes to establish procedures for the resolution of Operational Lien Claims secured by valid and enforceable Operational Lines (as described in more detail below, the "Lien Procedures").[2]

22.     Specifically, to help ensure the prompt resolution of lien disputes and satisfaction of valid Operational Liens against the available Net Sale Proceeds, the Debtor proposes that the following Lien Procedures be implemented.

(a)     The Debtor shall be authorized to sell homes to customers under the Sales Contracts, which sales shall be free and clear of all liens, claims, encumbrances and other interest.

(b)     No Operational Lien Claimant with respect to a home sold under a Sales Contract shall have any claim against the Gross Sale Proceeds, the Debtor's Title Insurers, or any purchaser of a home with respect to any asserted lien or other claim arising from services performed for or goods delivered to the Debtor.

(c)     One the 20th day of each month after the Petition Date, the Debtor will file with the Court a notice (a "Home Closing Notice") setting forth all home sale closings during the preceding month, a description of any Net Sale Proceeds, (if any) received on account of such home closing, and a description of the proposed distribution of such Net Sale Proceeds (if any). The Debtor will serve such Home Closing Notice on each known Operational Lien Claimant regarding such home closings.  If an Operational Lien Claimant receiving a Home Closing Notice disputes the amount of Net Sale Proceeds received on account of a Sales Contract, or disputes the Debtor's proposed distribution of such Net Sale Proceeds, then such Operational Lien Claimant must, within ten (10) business days after Notice of the Home Closing Notice, provide the Debtor and the parties set forth in paragraph (h) below a written demand ("Demand") (i) setting forth the locations of the property sold, (ii) stating the amount of its asserted claim, (iii) describing, with particularity, the reasons the Operational Lien Claimant believes it has a valid Operational Lien against the individual property sold, and what Net Sale Proceeds exist with respect to such property sold, and (iv) attaching documentation (i.e., invoices or purchase orders) or other information sufficient to demonstrate that a valid Operational Lien Claim will exist as of the Closing Date with respect to such property.

(d)     If no Demand is timely submitted to the parties set forth in paragraph (h)

---

[2] The Lien Procedures discussed herein are intended to address Operational Lien Claims asserted in connection with prepetition liabilities of the Debtor, regardless of when the affected property is sold.  Nothing contained in the Lien Procedures should be construed to expand any lien rights to cover the postpetition period or to any other extent beyond what would be provided pursuant to applicable state law and bankruptcy laws.  The Debtor intends to apy all postpetition lien claimants in the ordinary course of business.

below, then the Net Sale Proceeds (if any) will be distributed as set forth in the Home Closing Notice, and the Operational Lien Claimant will have no other claim against, or interest in, any of the sale proceeds received under the Sales Contract.

       (e)    If a Demand is timely submitted to the parties set forth in paragraph (h), then the Debtor will have ten (10) business days to resolve: (a) the applicable Operational Lien (the "Unresolved Lien"), and such Unresolved Lien will attach to the Net Sale Proceeds (if any) as a lien and security interest junior to any replacement liens of the Lender, and/or (b) the amount of the Net Sale Proceeds raised by the Operational Lien Claimant.

       (f)    Upon identification of an Unresolved Lien by the Debtor, the Debtor and the Operational Lien Claimant, as applicable, shall attempt in good faith to determine the validity of the Unresolved Lie and/or the amount of the available Net Sale Proceeds. If the Debtor, with the consent of counsel to the Lenders, and any committee appointed, which consent shall not be unreasonably withheld, agree to pay all or a portion of the Operational Lien reflected in the Unresolved Lien, the Debtor may satisfy the Operational Lien without further order of the Court. The Debtor shall have thirty (30) days from the Debtor's notice to the Operational Lien Claimant that it has an Unresolved Lien (the "Lien Resolution Period") to either, with the consent of counsel to the Lenders, and any committee appointed, which consent shall not be unreasonably withheld:

       a.    advise the Operational Lien Claimant that the Debtor has determined that the Unresolved Lien is valid and/or that available Net Sale Proceeds exist to wholly or partially satisfy the Unresolved Lien within five (5) days of such determination; or

       b.    advise the Operational Lien Claimant that the Debtor continues to dispute the lien and/or the amount of the available Net Sale Proceeds and then file a motion or initiate an adversary proceeding (either, a Resolution Proceeding") asking the Court to determine the validity or amount of the Unresolved Lien and/or the amount of the available Net Sale Proceeds; *provided, however,* that if the Debtor determines that the Unresolved Lien is not likely to be resolved within the Lien Resolution Period, the Debtor may commence a Resolution Proceeding at any time before the expiration of the Lien Resolution Period and may seek an expedited hearing with respect thereto. If the Court determines that the Unresolved Lien is valid and/or that there are unencumbered Net Sale Proceeds to wholly or partially satisfy a valid Unresolved Lien, the Debtor shall satisfy same by paying such unencumbered Net Sale Proceeds to the Operational Lien Claimant within five (5) business days of the entry of a final, non-appealable order providing as such. If the Court determines that the Unresolved Lien is not valid, and/or that there are no unencumbered Net Sale Proceeds to satisfy a valid Unresolved Lien, then the Net Sale Proceeds, if any, will be free and clear of such valid lien, and/or the Debtor will not be required to pay such Unresolved Lien.

       (g)    If the Debtor does not comply with the provisions of paragraph (f) above within the deadlines specified, and such failure to comply is not cured within the deadlines specified, and such failure to comply is not cured within five (5) business days after notice of the deficiency is received by the Debtor, the counsel to the Lenders, and any committee appointed, the Unresolved Liens shall be deemed valid.

(h)    Demands must be mailed to the Debtor at the following address: **Princeton Homes, Inc., c/o Paul Rhodes, 500 Australian Avenue S, West Palm Beach, FL 33402**, counsel to the Debtor, Robert C. Furr, Esq., Furr and Cohen PA, 2255 Glades Road, Suite 337W, Boca Raton, FL 33431; counsel for the First Lien Lender at Comerica Bank, c/o Judith E. Kreitzer, Esq., Holland & Knight LLP, One East Broward Boulevard, Suite 1300, Ft. Lauderdale, FL 33301; and to any Creditors' Committee appointed in this case.

23.    The Lien Procedures set forth above will provide the Debtor with authority to make payments from the available, unencumbered Net Sale Proceeds to the Operational Lien Claimants in the amounts and to the extend necessary to satisfy undisputed Operational Liens securing undisputed prepetition claims.

## RELIEF REQUESTED

24.    By this motion, the Debtor requests entry of an order (a) authorizing, but not directing, the Debtor to continue to close on sales of homes under Sales Contracts and to continue to contract for the construction and sale of homes to customers in the ordinary course of business, (b) authorizing the Debtor to establish a segregated escrow account for postpetition customer deposits to purchase homes, (c) authorizing, but not directing, the Debtor to honor its obligations to homebuyers under prepetition Sales Contracts, including, where appropriate, to refund Deposits, (d) providing that the sale of homes to the Debtor's customers shall be free and clear of all liens, claims, encumbrances and other interests, including Operational Liens and Lender Liens, (e) authorizing , but not directing, the Debtor, in its discretion or as ordered by the Court pursuant to the established procedures, to satisfy Operational Liens out of the Net Sale Proceeds of home sales, (f) establishing the Lien Procedures set forth above, (g) authorizing the Debtor to use proceeds of the home sale subject to the Lien Procedures and as permitted under the terms of the proposed debtor-in-possession financing and any orders entered in connection therewith, and (h) authorizing, but not directing, the Debtor to proceed immediately with the sale

of homes and establishment of the Lien Procedures notwithstanding Bankruptcy Rule 6004(h).

25      In addition, the Debtor requests that financial institutions be authorized to receive, process, honor and pay all checks presented for payment and electronic payment requests related to the Sales Contracts or Lien Procedures, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date.  The Debtor further requests that all such financial institutions be authorized to rely on the Debtor's designation of any particular check or electronic payment request as appropriate pursuant to this motion.

## SUPPORTING AUTHORITY

**A.      The Debtor Is Authorized to Sell Homes.**

26.      Continuation of the Debtor's home-selling activities is critical to its reorganization effort and consistent with sections 363(c) and 1108 of the Bankruptcy Code which, together, authorize the continued operation of a business in the ordinary course by Chapter 11 debtors.  *See* 11 U.S.C. § 363(c)(1) (providing that, so long as "the business of the debtor is authorized to be operated under [section 1108 of the Bankruptcy Code] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice and a hearing, and may use property of the estate in the ordinary course of business, without notice or a hearing . . . . ");  11 U.S.C. § 1108 (debtor in possession, as trustee, may operate the debtor's business unless court orders otherwise).

27.      Even to the extent the Debtor continued sale of homes could possibly be construed as being outside the ordinary course of its business (which the Debtor in no way concedes), the Court has the authority to grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he

trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . . " 11 U.S.C. § 363(b)(1).

28.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines),* 780 F.2d 1223, 1225-26 (5th Cir. 1986); *Official Comm. of Unsecured Creditors of LTV Acceptance and Def. Co. v. LTV Corp (In re Chateaugay Corp.)* 973 F.2d 141, 143 (2nd Cir. 1992), *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)* 722 F2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17-18 (Bankr. M.D. Fla. 2005) (applying sound business justification standard in authorizing payment of prepetition claims pursuant to section 363(b)).

29.     In this Chapter 11 case, it is clear that sufficient business justification exists for the Debtor to close on the sale of homes, including to make payments related to prepetition closings, as well as to continue to contract for the construction and sale of homes postpetition in the ordinary course. The Debtor's business is the construction and sale of homes and it must retain the authority to continue to sell homes in order to ensure cash flow during the Chapter 11 case.

30.     To facilitate the sale of homes, for the same reasons set forth above, the Debtors are authorized to establish the Postpetition Deposit Escrow for the benefit of customers placing postpetition Deposits for the sale of homes.

**B.     The Debtor Should be Authorized to Sell Homes Free and Clear of Liens, Claims, Encumbrances and Other Interests.**

31.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims, encumbrances and other interests if one of the following conditions is satisfied:

> (1)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2)     the [lienholder or claimholder] consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is *in bona fide* dispute; or
>
> (5)     [the lienholder] or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f). Because 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale of homes. *See In re Levitt and Sons, LLC*, 384 B.R. 630, 647 (Bankr. S.D. Fla 2008) (distinguishing different methods under Section 363(f) for selling property free and clear of liens); *Citicorp Homeowners Servs., Inc vs. Elliot In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that the court may approve sale "free and clear" provided at least one of the subsections of 363(f) is met); *In re Gulf States*, 285 B.R. 497 (Bankr. N.D. Ala. 2002); *In re 18th Ave. Dev. Corp. a Modular Paving, Inc. (In re 28th Ave. Dev. Corp.)*, 14 B.R. 862, 863-4 (Bankr. S.D. Fla. 1981) (stating that section 363(f) indicates that before sale of property may be authorized "free and clear" only one of the five conditions must be met).

32.     With respect to the Debtor's proposed sales under the Sales Contracts, each lien,

claim, encumbrance or other interest in the Debtor's homes satisfies at least one of the five conditions set forth in section 363(f). Specifically, with respect to the Operation Lien Claims, section 363(f)(3) and (5) are satisfied, and, in some case, section 363(f)(4) may also apply. With respect to the Lender Liens, section 363(f)(2) is satisfied because the Lenders have consented to the sale of homes free and clear of their liens under the ***terms of the prepetition credit*** agreements.

33.     The Debtor may sell homes under Sales Contracts free and Clear of Operational Lien Claims because the Lien Procedures establish a process by which the Operational Lien Claims will be paid to the extent of any unencumbered Net Sale Proceeds if the Operational Lien Claim is not disputed. This is true even if the unencumbered Net Sale Proceeds are insufficient to satisfy an Operational Line Claim. A sale of property free and clear of liens is proper under section 363(f)(3) of the Bankruptcy Code so long as the "price at which such property is to be sold is greater than the aggregate value of all liens on such property." 11 U.S.C. § 363(f)(3). In this regard, the term "value" means "economic value" (as opposed to the "face value") of the liens asserted against the property. *See In re Beker Industries Corp.*, 63 B.R. 474 (Bankr. S.D.N.Y. 1986); *In re Oneida Lake Development, Inc.*, 114 B.R. 352, 357 (Bankr. N.D.N.Y. 1990); *In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995). Courts observe correctly that "value" under section 363(f)(3) of the Bankruptcy Code should be interpreted in light of the meaning of "value" under section 506(a) of the Bankruptcy Code. As set forth in *Beker*:

> It is thus plainly indicated that the term "value", as used in § 506(a) with respect to the interest of a secured creditor, means the actual value as determined by the Court, as distinguished from the amount of the lien. That indication and the last sentence of § 506(a) requiring determination of value upon disposition of an asset standing as collateral strongly supports the conclusion that the term "value", as employed in § 363(f)(3) is to be similarly interpreted.

* * *

> We thus conclude that § 363(f)(3) is to be interpreted to mean what it says: the price must be equal to or greater than the aggregate value of the liens asserted against it, not their amount.

*In re Beker,* 63 B.R. at 476.

34.     The Debtor submits that the fair market value of the homes subject to the Sales Contracts may be less than the total Lender Liens asserted against such properties. Therefore, the only claims against homes subject to Sales Contracts with any value may be the Lender Liens – Operational Lien Claims against such properties may be wholly undersecured. In this scenario, the economic value of the Operational Lien Claims is zero, and the sale of such property is appropriate in accordance with section 363(f)(3) of the Bankruptcy Code. *See id; see also In re Oneida Lake Development, Inc.*, 114 B.R. at 356-57; *In re Collins*, 180 B.R. at 450. furthermore, section 363(f)(5) allows a sale free and clear of liens if the secured creditor could be compelled in a "legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). It is axiomatic that the Operational Lien Claimant could be compelled by this Court to accept a money satisfaction of its liens that is less than the amount of the Operational Lien Claim under the cram-down provisions of section 1129(b)(2) of the Bankruptcy Code. *See Levitt and Sons*, 384 B.R. 648 (noting the court could approve sales pursuant to section 363(f)(5) based on a hypothetical cram-down under section 1129(b)(2)); *Gulf States Steel*, 285 B.R. at 508; *In re Perrocello*, 170 B.R. 189, 191 (Bankr. D. Mass. 1994) (finding that, in the context of section 363(f)(5) of the Bankruptcy Code, Congress granted Courts authority to compel secured creditor to accept a money satisfaction of their liens under the cram-down provisions.) Furthermore, "money satisfaction" does not mean full payment. *See also In re Grand Slam U.S.A., Inc.*, 178 B.R. 460, 462 (E.D. Mich. 1995) (cram down allows less than full payment under section

363(f)(5); *In re Healthco International, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) [finding that "money satisfaction of such interest" under section 363(f)(5) means "payment constituting less than full payment of the underlying debt" and that the cram-down provisions of the Bankruptcy Code apply under section 363(f)(5)): *Levitt And Sons*, 384 B.R. at 648 (noting that "if the legal or equitable proceeding contemplated by § 363(f)(5) would result in the junior lien holder receiving nothing, then a § 363(f)(5) sale that pays them nothing or gives them an unsecured claim . . . would be permissible").

35.    Under the cram-down provisions of section 1129(b)(2) of the Bankruptcy Code, the Debtor could also compel the Operational Lien Claimants to accept "deferred cash payments totaling at least the allowed amount of such claim, of a value . . . of at least the value of such holder's interest in such property . . . . " 11 U.S.C. § 1129(b)(2)(A)(i)(II).  Furthermore, section 1129(b)(2)(A)(iii) of the Bankruptcy Code allows the Debtor to provide the Operational Lien Claimants the "indubitable equivalent" of their Operational Liens under a Chapter 11 plan. Because the Operational Lien Claims may be 100% undersecured, the Debtor could compel the Operational Lien Claimants to accept deferred cash payments totaling zero dollars under the Bankruptcy Code, or the Debtor could provide the Operational Lien Claimants the indubitable equivalent of their claims – which is nothing.  *See, e.g., Steel*, 285 B.R. at 508-09 (wholly undersecured creditor entitled to nothing under the cram-down provisions of the Bankruptcy Code, and hence, entitled to no payment under section 363(f)(5) of the Bankruptcy Code).

36.    Additionally, to the extent the Debtor disputes the validity of the Operational Lien Claim, then, under section 364(f)(4) of the Bankruptcy Code, the Debtor can transfer homes to customers in the ordinary course of business free and clear of all liens, claims, encumbrances, and other interest, with such liens and interest to attached to the Net Sale Proceeds (if any).

**D.    Authority Exists to, If Necessary, Refund Deposit, Establish the Lien Procedures and Pay Operational Liens (Where Applicable)**

37.    Court has generally acknowledged that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances.  *See generally In re Tousa, Inc.*, No. 08-10928 (Bankr. S.D. Fla. Jan. 1, 2008); *In re All American Semiconductor, Inc.*, No. 07-12963 (Bankr. S.D. Fla. May 1, 2007); *In re ITG Vegas, Inc.*, No. 06-16350 (Bankr. S.D. Fla. Dec. 19, 2006); *In re Gemini Cargo Logistics, Inc.*, No. 06-10870, (Bankr. S.D. Fla. Mar 20, 2006).  In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

38.    Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *In re CoServ*, LLC, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."  *Id.*  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."  *Id.*  The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate…." *Id.*

39.    Consistent with the debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.  *See, e.g., In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17-18 (Bankr. M.D. Fla. 2005) (authorizing payment to critical vendors for prepetition amounts and

finding that a sound business justification existed for payment because the vendors would not do business with the debtors absent the critical vendor status, and the disfavored creditors were not any worse off due to the critical vendor order); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential Operational Lien Claimants because the payments were necessary for general contractors to release funds owed to debtors).

40.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor' business.  Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

41.     The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases and was first articulated in *Miltenberger v. Logansport, C. & S. W.R. Co.,* 106 U.S. 286(1882).  The doctrine was expanded to non-railroad debtors in the mid-century, *see Dudley v. Mealey,* 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors of non-railroad debtors where the alternative was the cessation of operations), and has long been recognized as precedent within

the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (making *S. Ry. Co. v. U.S. Guar. Co.,* 87 F.2d 118, 119 (5th Cir. 1936) binding 11th Circuit precedent); *S. Ry. Co. v. U.S. Fid. & Guar. Co.,* 87 F.2d 118, 119 (5th Cir. 1936) ("There is a doctrine which permits preferential payments of a common claim when necessary for the benefit of the estate.") (citing cases, including *Miltenberger*, supra); *see also Tropical Sportswear*, 320 B.R. at 16 (Bankr. M.D. Fla. 2005) (authorizing payment to critical vendors where payment is, *inter alia*, necessary to the reorganization process).

42. Accordingly, the Debtor respectfully requests that it have authorization to continue to return Deposits under prepetition Sales Contracts (if necessary), and to implement the Lien Procedures and payment of Operational Lien Claims when appropriate under such Lien Procedures.

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form annexed hereto: (a) authorizing, but not directing the Debtor to continue to close on sales of homes under Sales Contracts and to continue to contract for the construction and sale of homes in the ordinary course of business, (b) authorizing the Debtor to establish a segregated escrow account for postpetition customer deposits to purchase homes, (c) authorizing, but not directing, the Debtor to refund Deposits to homebuyers under prepetition Sale Contracts, where appropriate, (d) providing that the sale of homes to the Debtor's customers shall be free and clear of all liens, claims, interests and encumbrances, (e) authorizing, but not directing, the Debtor, in its discretion or as ordered by the Court pursuant to the established procedures, to satisfy claims secured by Operational Liens out of the Net Sale Proceeds of home sales, (f) establishing the Lien Procedures for resolving disputed Operational Lien Claims, (g) authorizing, but not directing the Debtor to proceed immediately with the sale of homes and establishment of

the Lien Procedures notwithstanding Bankruptcy Rule 6004(h), (h) authorizing financial institutions to honor all related checks and electronic payment requests, and (i) granting such other and further relief as this court deems just and proper.

Respectfully Submitted this 16th day of August, 2009.

FURR AND COHEN, P.A.
Attorney for Debtor
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
(561) 395-0500/(561)338-7532-fax

By /s/ Robert C. Furr
ROBERT C. FURR, ESQ.
Florida Bar No. 210854
EMAIL rfurr@furrcohen.com

- 20 -



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:
PRINCETON HOMES, INC.                         CASE NO. 10-31773-EPK
                                              CHAPTER 11

_____ Debtor _____ /

### ORDER AUTHORIZING DEBTOR TO SELL HOMES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) ESTABLISHING ESCROW FOR POSTPETITION CUSTOMER DEPOSITS TO PURCHASE HOMES, AND (C) ESTABLISING PROCEDURES FOR THE RESOLUTION AND PAYMENT OF LIEN CLAIMS [DE#     ]

THIS CAUSE came before the Court at hearing on _____, in West Palm Beach, Florida, upon the Motion (the "Motion") [DE#_____] of the Debtor for the entry of an order pursuant to sections 105(a), 363(b), (c) and (f), 506(b), 541, 546(b), 1107 and 1109 of title 11 of the United States Code (the "Bankruptcy Code") (A) Authorizing the Debtor to Sell Homes Free and Clear of Liens, Claims, Encumbrances And Other Interests; (B) Establishing Escrow For Post Petition Customer Deposits to Purchase Homes, and (C) Establishing Procedures for the Resolution and Payment of Operational Lien Claims, and it appearing that the

- 1 -

relief requested is in the best interests of the Debtor's estate, its creditors and all other parties in interest; and due and sufficient notice of the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested there being a core proceeding pursuant to .28 U.S.C. § 157(b); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefore,

ORDERS as follows:

1.    The Motion is GRANTED.

2.    Within five (5) days of the date of the entry of this Order, the Debtor will serve a copy of this Order on all known Operational Lien Claimants.

3.    The Debtor is authorized, but not directed, in the exercise of its business judgment, to continue to close on the sale of homes pursuant to sales contracts (the "Sales Contracts"), including prepetition Sales Contracts, and to perform all obligations under the Sales Contracts and to take any other reasonable actions that may be necessary to effectuate closings under the Sales Contracts, including to modify the prepetition Sales Contracts at or before closing to address market conditions or other negotiating changes consistent with the Debtor's business judgment and past practice.

4.    Notwithstanding the relief requested in the Motion, the Debtor is authorized, but not directed, to refund customer deposits (the "Deposits") up to $200,000.00 if warranted by the terms of the pre-petition Sales Contracts or the Debtor's business judgment and past practice. the Debtor shall maintain a summary list of all customer Deposit refunds and shall provide updated copies of such list to counsel to the Lenders.  The Debtor reserves the right to seek

authority to refund additional Deposits at the final hearing held in this matter.

5.      The Debtor is authorized, but not directed, to continue to enter into postpetition Sales Contracts for the construction and sale of homes, and to sell homes in the ordinary course of business in accordance with such postpetition Sales Contracts.

6.      The Debtor is authorized to establish a segregated escrow account to hold Deposits received on account of postpetition Sales Contracts (the "Postpetition Deposit Escrow") until such Deposits become non-refundable under applicable postpetition Sales Contracts.  While held in the Postpetition Deposit Escrow, such Deposits shall not be deemed to be estate property, nor shall such Deposits be subject to the claims and liens of the Debtor's creditors.

7.      The Debtor and any intermediary financial institution participating in any postpetition home closings are authorized to transfer title, deed property and take any other actions as may be necessary to transfer ownership to the Debtor's homebuyers.

8.      Pursuant to 363(f) of the Bankruptcy Code, all sales of homes by the Debtor shall be free and clear of any and all liens, claims, interests and encumbrances, including, without limitation, all Operational Liens and Lender Liens, whether asserted or unasserted, known or unknown, with all such liens to attach to the cash proceeds of such sales as maintained in the Debtor's bank account consistent with the terms of this Order, including, but not limited to, Paragraph 15 (as applicable) in the same force, effect and priority as such liens had immediately prior to the sale and as set forth in any orders, subject to the rights and defenses of the Debtor and any party in interest with respect to any such asserted liens.  For the avoidance of doubt, notwithstanding anything in Paragraphs 15 of this Order, Operational Liens and Lender Liens, whether asserted or unasserted, known or unknown, will transfer to the proceeds of any home sold pursuant to this Order and will no longer attach to the properties sold once the sale closes.

9.      The Lender under the Debtor's prepetition secured financing facilities is authorized and directed to deliver partial releases and other instruments evidencing releases of the Lender Liens upon the request and at the expenses of the Debtor as may be required under the terms of the applicable prepetition financing agreements.

10.     The Debtor's title insurance agents and underwriters are authorized to provide title insurance without exception notwithstanding any statutory requirements requiring a "gap affidavit" or other documentation.

11      The Debtor shall file a copy of this Order in each county where the Debtor is selling residential homes subject to the Order.  Once filed, this Order may be relied upon by all title agents and title insurance underwriters involved in order to issue their title policies on properties located within each such county without exception to the Operational Liens and Lender Liens, whether asserted or unasserted, known or unknown.

12.     Subject to satisfaction of the Operational Liens from the unencumbered Net Sale Proceeds (if any are available) and release of the Lender Liens pursuant to the procedures set forth below, the Debtor is authorized to hold and use the proceeds of home sales, subject to the terms set forth herein and any other order, and any intermediary financial institution or transfer agency participating in the closing of a sale of a home pursuant to this Order is authorized to transfer such proceeds to the Debtor to be held by the Debtor.

13.     Operational Lien Claims secured by a valid and enforceable Operational Liens shall be deemed secured claims against the Debtor to the extent of, and shall attach to, the available, unencumbered Net Sale Proceeds from the applicable home sale as maintained in the Debtor's bank accounts consistent with the terms of this Order, including, but not limited to Paragraph 15.

- 4 -

14.    No Operational Lien Claimant shall have any claim against the Debtor's title insurance agent or underwriters or any purchaser of a home with respect to any asserted Operational Lien or other claim or interest relating to any property sold pursuant to this Order.

**Operational Lien Claims**

15.    The following Lien Procedures are hereby adopted by this Court:

(a)    The Debtor shall be authorized to sell homes to customers under the Sales Contracts, which sales shall be free and clear of all liens, claims, encumbrances and other interest.

(b)    No Operational Lien Claimant with respect to a home sold under a Sales Contract shall have any claim against the Gross Sale Proceeds, the Debtor's Title Insurers, or any purchaser of a home with respect to any asserted lien or other claim arising from services performed for or goods delivered to the Debtor.

(c)    One the 20th day of each month after the Petition Date, the Debtor will file with the Court a notice (a "Home Closing Notice") setting forth all home sale closings during the preceding month, a description of any Net Sale Proceeds, (if any) received on account of such home closing, and a description of the proposed distribution of such Net Sale Proceeds (if any). The Debtor will serve such Home Closing Notice on each known Operational Lien Claimant regarding such home closings. If an Operational Lien Claimant receiving a Home Closing Notice disputes the amount of Net Sale Proceeds received on account of a Sales Contract, or disputes the Debtor's proposed distribution of such Net Sale Proceeds, then such Operational Lien Claimant must, within ten (10) business days after Notice of the Home Closing Notice, provide the Debtor and the parties set forth in paragraph (h) below a written demand ("Demand") (i) setting forth the locations of the property sold, (ii) stating the amount of its asserted claim, (iii) describing, with particularity, the reasons the Operational Lien Claimant believes it has a valid Operational Lien against the individual property sold, and what Net Sale Proceeds exist with respect to such property sold, and (iv) attaching documentation (i.e., invoices or purchase orders) or other information sufficient to demonstrate that a valid Operational Lien Claim will exist as of the Closing Date with respect to such property.

(d)    If no Demand is timely submitted to the parties set forth in paragraph (h) below, then the Net Sale Proceeds (if any) will be distributed as set forth in the Home Closing Notice, and the Operational Lien Claimant will have no other claim against, or interest in, any of the sale proceeds received under the Sales Contract.

(e)    If a Demand is timely submitted to the parties set forth in paragraph (h), then the Debtor will have ten (10) business days to resolve: (a) the applicable Operational Lien (the "Unresolved Lien"), and such Unresolved Lien will attach to the Net Sale Proceeds (if any) as a lien and security interest junior to any replacement liens of the Lender; and/or (b) the amount of the Net Sale Proceeds raised by the Operational Lien Claimant.

(f)     Upon identification of an Unresolved Lien by the Debtor, the Debtor and the Operational Lien Claimant, as applicable, shall attempt in good faith to determine the validity of the Unresolved Lie and/or the amount of the available Net Sale Proceeds. If the Debtor, with the consent of counsel to the Lenders, and any committee appointed, which consent shall not be unreasonably withheld, agree to pay all or a portion of the Operational Lien reflected in the Unresolved Lien, the Debtor may satisfy the Operational Lien without further order of the Court. The Debtor shall have thirty (30) days from the Debtor's notice to the Operationsal Lien Claimant that it has an Unresolved Lien (the "Lien Resolution Period") to either, with the consent of counsel to the Lenders, and any committee appointed, which consent shall not be unreasonably withheld:

a.     advise the Operational Lien Claimant that the Debtor has determined that the Unresolved Lien is valid and/or that available Net Sale Proceeds exist to wholly or partially satisfy the Unresolved Lien within five (5) days of such determination; or

b.     advise the Operational Lien Claimant that the Debtor continues to dispute the lien and/or the amount of the available Net Sale Proceeds and then file a motion or initiate an adversary proceeding (either, a Resolution Proceeding") asking the Court to determine the validity or amount of the Unresolved Lien and/or the amount of the available Net Sale Proceeds; *provided, however,* that if the Debtor determines that the Unresolved Lien is not likely to be resolved within the Lien Resolution Period, the Debtor may commence a Resolution Proceeding at any time before the expiration of the Lien Resolution Period and may seek an expedited hearing with respect thereto. If the Court determines that the Unresolved Lien is valid and/or that there are unencumbered Net Sale Proceeds to wholly or partially satisfy a valid Unresolved Lien, the Debtor shall satisfy same by paying such unencumbered Net Sale Proceeds to the Operational Lien Claimant within five (5) business days of the entry of a final, non-appealable order providing as such. If the Court determines that the Unresolved Lien is not valid, and/or that there are no unencumbered Net Sale Proceeds to satisfy a valid Unresolved Lien, then the Net Sale Proceeds, if any, will be free and clear of such valid lien, and/or the Debtor will not be required to pay such Unresolved Lien.

(g)     If the Debtor does not comply with the provisions of paragraph (f) above within the deadlines specified, and such failure to comply is not cured within the deadlines specified, and such failure to comply is not cured within five (5) business days after notice of the deficiency is received by the Debtor, the counsel to the Lenders, and any committee appointed, the Unresolved Liens shall be deemed valid.

(h)     Demands must be mailed to the Debtor at the following address: **Princeton Homes, Inc., c/o Paul Rhodes, 500 Australian Avenue S, West Palm Beach, FL 33402,** counsel to the Debtor, Robert C. Furr, Esq., Furr and Cohen PA, 2255 Glades Road, Suite 337W, Boca Raton, FL 33431; counsel for the First Lien Lender at Comerica Bank, c/o Judith E. Kreitzer, Esq., Holland & Knight LLP, One East Broward Boulevard, Suite 1300, Ft. Lauderdale, FL 33301; and to any Creditors' Committee appointed in this case.

16.     Subject to Paragraph 15 above, the Debtor is authorized to use proceeds from the

- 6 -

sale of homes for general corporate purposes in the ordinary course of business without being required to escrow such proceeds.

17.    The Debtor is authorized to satisfy any Operational Liens from the proceeds of the home sales according to the Lien Procedures set forth above.

18.    All Operational Lien Claimants paid pursuant to the terms of this Order are authorized and directed, upon receipt of payment and at the request and expenses of the Debtor, to provide documentation evidencing the release of their Operational Lien Claims.

19.    No payment made pursuant to the terms of this Order is intended or should be construed as an admission as to the validity or extent of any Operational Lien Claim against the Debtor or a waiver of any rights of the Debtor or other party in interest to dispute the validity or extent of any Operational Lien Claim as provided in this Order.

20.    All financial institutions are authorized to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the relief granted in this Order.

21.    The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure and Local Rule 9013-1(K) are satisfied by the contents of the Motion or otherwise deemed waived.

23.    The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

24.    Notwithstanding the possible applicability of Rules 6004(h), 7062 or 9014 of the Federal Rules of Bankruptcy Procedures, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

25.    Entry of this interim Order is without prejudice to the rights of any party in

interest to interpose an objection to the Motion at the Final Hearing.

26.    The relief granted herein shall be binding upon any Chapter 11 trustee appointed
in this case and upon any Chapter 7 trustee appointed in the event of a subsequent conversion of
this case to a case under Chapter 7.

29.    All time periods set forth in this Order shall be calculated in accordance with Rule
9006(a) of the Federal Rules of Bankruptcy Procedure.

30.    This Court retains jurisdiction with respect to all mattes arising from or related to
the implementation of this Order.

# # #

**SUBMITTED BY:**

Robert C. Furr, Esq.
Furr and Cohen, P.A.
Atty for Debtor
2255 Glades Road #337W
Boca Raton, FL 33431
(561)395-0500
(561)338-7432 fax
**e-mail: rfurr@furrcohen.com**

**Copies furnished to**:
Robert C. Furr, Esq.
Furr and Cohen, P.A.
Attorney for Debtor
One Boca Place, Suite 337W
2255 Glades Road
Boca Raton, FL 33431

Attorney Robert C. Furr is directed to serve a copy of this Order on the twenty largest creditors
and appearances and file a Certificate of Service with the Court.