UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:
PRINCETON HOMES, INC.                    CASE NO. 10-31773-EPK
                                         CHAPTER 11

_____ Debtor _____/

### DEBTOR'S DISCLOSURE STATEMENT

FURR AND COHEN, P.A.
Attorneys for Debtor
By:  Robert C. Furr, Esq.
2255 Glades Road
One Boca Place, Suite 337W
Boca Raton, Florida 33431
Fla Bar No. 210854
(561) 395-0500
(561)338-7532 fax
E-Mail: rfurr@furrcohen.com

**ARTICLE I  DEFINITIONS** ...................................................................................4

**ARTICLE II  PRELIMINARY STATEMENT AND HISTORY AND FINANCIAL
CONDITION OF DEBTOR** ..................................................................4
    (1) HISTORY OF DEBTOR ............................................................................4
    (2) SUMMARY OF REASONS FOR FILING PETITION .................................5
    (3) SOURCE OF FINANCIAL INFORMATION ...............................................6

**ARTICLE III  DEBTOR'S OPERATION AND STRUCTURE**.............................6
    (1) SYNOPSIS OF OPERATION IN CHAPTER 11...........................................6
    (2) EXECUTORY CONTRACTS......................................................................9
    (3) OBJECTIONS TO CLAIMS AND PREFERENCE ANALYSIS.................10
    (4) OFFICERS AND DIRECTORS .................................................................11

**ARTICLE IV**

       **TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**.....................12

**ARTICLE V  CLAIMANTS AND IMPAIRED INTEREST HOLDERS**.............................16

**ARTICLE VI  ANALYSIS OF THE PLAN VS. LIQUIDATION ANALYSIS**.....................17

**ARTICLE VII  RISK ANALYSIS** ......................................................................18

**ARTICLE VIII  POST-CONFIRMATION REORGANIZED DEBTOR'S STRUCTURE** 18

**ARTICLE IX  CONFIRMATION BY CRAM DOWN** ........................................19

**ARTICLE X  MISCELLANEOUS PROVISIONS** ..............................................20

**ARTICLE XI  CONCLUSION**............................................................................21

<u>EXHIBITS:</u>
"A"    Monthly Reports
"B"    Claims and Classifications
"C"    Liquidation Analysis

## DEBTOR'S DISCLOSURE STATEMENT

The Debtor provides this Disclosure Statement to all known creditors of the Debtor in order to disclose the information deemed to be material, important, and necessary for creditors to arrive at a reasonably informed decision in exercising their right to abstain from voting or to vote for acceptance or rejection of the Debtor's Plan of Reorganization, (hereinafter "the Plan"). A copy of the Plan accompanies this Disclosure Statement.

The Court has set a hearing on confirmation of the Plan for _____ at _____, at _____. Creditors may vote on the Plan by filling out and mailing the accompanying ballot form to the Bankruptcy Court. Your Ballot must be filed on or before _____. As a creditor, your vote is important. In order for the Plan to be deemed accepted, of the ballots cast, creditors that hold as least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired Classes must accept the Plan. However, you are advised that the Debtor may be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting creditors consistent with the limitations set forth in the Bankruptcy Code.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY), ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND

- 2 -

INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

The Debtor filed a voluntary Petition for Reorganization Under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. 101 et seq., (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") on July 28, 2010 (the "Filing Date"). The Debtor has continued to operate its business as a Debtor-In-Possession pursuant to § 1108 of the Bankruptcy Code.

You are urged to carefully read the contents of this Disclosure Statement before making your decision to accept or reject the Plan. Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist. The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR'S MANAGEMENT, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS, OTHER THAN THOSE SET FORTH HEREIN, CONCERNING THE DEBTOR, (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY), ARE AUTHORIZED BY THE DEBTOR.

Projections of results of future operations are based on management's best estimates in light of current market conditions, past experience, analysis of general economic conditions, and other estimates which will bear on the results.

- 3 -

# ARTICLE I

## DEFINITIONS

The Definitions set forth in Article I of the Plan are incorporate herein.

# ARTICLE II
## PRELIMINARY STATEMENT AND
## HISTORY AND FINANCIAL CONDITION OF DEBTOR

### HISTORY OF DEBTOR

The Debtor operates a homebuilding business in Port St Lucie, Florida.  The company was established in 2001 to build single family homes in the St James Golf Club development, eventually building hundreds of homes in that community.

In 2005, the company began advance sales in its next community, the townhome development known as St Andrews Park, also in Port St Lucie and adjacent to the St James Golf Club community.  Townhome construction began upon the availability of permits in 2007, with the first townhome units delivered to the buyers in 2008.

Sales and prices in the Debtor's communities fell precipitously from their peak in 2005 through the present, with townhome prices currently less than half their peak level.

The Debtor operates its business adjacent to the St Andrews Park townhome community, with a sales office staffed by a single employee who shows homes seven days a week, in both the St Andrews and nearby St James communities.  Since the filing, the Debtor has sold two homes, one in which closed just prior to year end, and the other which closed in the first week of the new year.

The Debtor has the following affiliates:  Princeton Mortgage, Inc. (a subsidiary).

- 4 -

The Debtor does provide a 401(k) plan.  Currently there are no employees participating in the 401(k) Plan, but there are former employees who kept their assets in the Plan.

## (2)  SUMMARY OF REASONS FOR FILING PETITION

The filing of the Bankruptcy Petition was prompted by the costs of defense of various lawsuits, the majority of which the Debtor believes are entirely without merit.  Most are Chinese Drywall Class related claims, where the Debtor, a builder, was without knowledge regarding any condition of the drywall, and was neither negligent with respect to any best-practices during the construction, nor did it possess any information that might have been relevant to the buyer during the time the sale of the finished homes were made.   There are two pending Class Action lawsuits regarding the defective dry wall claims.

The other lawsuits which prompted the filing were spurious product liability claims that allege water damage as a result of improperly installed windows in one case, and inadequately sealed hurricane shutter bolts in the other.  In the lawsuit regarding the water damage, the facts concerning the Debtor's window installation alleged by the plaintiff itself are in perfect accord with the building code's requirements (so of course, no liability could arise).  In the second case regarding inadequately sealed hurricane shutter bolts, the alleged defect is patently spurious as it alleges water entry via external bolts that are used to hand exterior hurricane shutters and are set in stucco.  The Debtor believes the claims of all the plaintiffs are spurious, and yet the cost of defending them has exhausted the liquid assets of the Debtor, prompting the filing of the petition to conserve the assets for the benefit of all parties in interest.

(3)  SOURCE OF FINANCIAL INFORMATION

The source of financial information for this Disclosure Statement and Plan is from reports from Debtor's officers, Debtor-In-Possession Reports, and the Debtor's accountants.  It has not been audited.

## ARTICLE III

## DEBTOR'S OPERATION AND STRUCTURE

(1) SYNOPSIS OF OPERATION IN CHAPTER 11

The Debtor is a Florida Corporation that conducts homebuilding operations in the State of Florida, and more particularly in St. Lucie County, Florida.  The Debtor has an office staffed by employees located in Palm Beach County and St. Lucie County and owns real estate and personal property at locations in St. Lucie County.

At the time of the Chapter 11 filing, the Debtor owned twenty-nine (29) residential real properties, including seven (7) single family homes at St James Golf Club and 22 townhomes at St Andrews Park Townhomes.  These homes have been completely built.  The Debtor also owns six (6) vacant residential lots at St Andrews Townhomes and one (1) lot at St James Club.  Comerica Bank has mortgages on the properties known as lots 113, 144, 147, 149, 151,154 and 159 at the time of the filing.  Comerica Bank obtained an Order Granting Relief from the Stay [DE#37] which granted Comerica Bank authority to foreclose on these lots and seek an in rem judgment against the properties only.

During the bankruptcy proceeding the Debtor has perfectly maintained the housing units, renting four (4) units in order to develop the cash flow necessary to pay basic operating expenses and utility bills. The Debtor has recently produced and distributed marketing materials announcing new lower pricing in time for the arrival of the seasonal golfer-oriented

- 6 -

selling season, which traditionally starts the week following January 1st.  Accordingly, two townhomes have recently been sold at prices of $149,900 and $152,000 (net of Seller contribution to buyer's closing expenses) respectively.

The Court entered an Order Shortening Time for Filing Proofs of Claims, Establishing Plan and Disclosure Statement Filing Deadlines and Addressing Related Matters on September 1, 2010.  The Claims Bar Date was shortened to October 26, 2010 [DE#25].

A Committee of Unsecured Creditors was appointed on September 28, 2010 and consists of creditors, Nick and Melissa D'Andola, Frank Gumina and Eric M Welling [DE#40]. The Creditors' Committee is represented by counsel, Tina Talarchyk, Esq.

A Motion to Sell Homes Free and Clear of Liens, Claims and Encumbrances and Other Interests in the Ordinary Course of Business was filed on August 16, 2010 [DE#14] whereby the Debtor requested an order from the Court allowing the Debtor to sell homes in its ordinary course of business.  There was a Limited Objection to the Motion filed by creditor Satchel LLC, a Tax Certificate Holder, and the objection was resolved.  An order approving the motion was entered on September 29, 2001 [DE#43].

The Debtor filed a Motion for Continuation of Utility Services and Determining Adequate Assurance of Payment of Future Utility Services [DE#8] and a Final Order was entered on October 7, 2010 [DE#46].

Comerica Bank filed a Motion for Relief From Stay [DE#23] requesting relief to foreclose on the seven properties on which it had mortgages.  The Court entered an Agreed Order Granting Comerica Bank relief to foreclose on the seven properties subject to its mortgages [DE#37].

Wells Fargo Equipment Finance filed a Motion for Relief regarding its valid

perfected lien encumbering a 34' x 60' Modular Office Complex [DE#26]. The Debtor filed a Response to the Motion for Relief [DE#35]. The Court entered an Agreed Order Approving Adequate Protection to Wells Fargo of monthly payments in the amount of $2,218.54 [DE#62].

Creditors, Joseph and Mary Ann Virone filed a Motion for Relief [DE#53]. on September 4, 2009, pre-petition, the U.S. District Court entered a Final Judgment in favor of the Virones and against the debtor in the amount of $61,210.48, plus post-and pre-judgment interest. The Debtor appealed the Judgment to the Eleventh Circuit. The Debtor obtained a stay pending appeal by depositing $62,056.86 in a trust account. Two days after the Chapter 11 case was filed, the Eleventh Circuit issued an opinion in favor of the Virones. The Virones sought relief from the bankruptcy court so that the opinion issued by the Eleventh Circuit on July 30, 2010 does not have to be reissued. The Debtor has agreed that the Virones should take the $62,056.86. An Agreed Order granting the relief requested by the Virones has been entered by the bankruptcy court [DE#82].

The Debtor filed a Motion to Compromise Controversy regarding a settlement with Andrew J. Davis [DE#41]. Pre-petition, a lawsuit known as Andrew Davis vs Princeton Homes was filed in the U.S. District Court, wherein a Final Judgment was awarded in favor of Davis on March 3, 2010 in the amount of $100,000, plus costs and interest. Princeton Homes appealed to the Eleventh Circuit. A stay pending appeal was entered and Princeton Homes deposited $101,163.20 in escrow in lieu of a bond. The parties agreed to settle the matter by dividing the funds in escrow and paying 60% ($60,697.96) to Davis and 40% ($40,465.30) to the Debtor. This Court entered an Order approving the agreement [DE#75]. The Debtor has received $40,465.30 and the funds were placed in the Debtor-in-Possession operating account.

Claimants, Nick D'Andola and Melissa D'Andola filed a Motion for Relief [DE#172] to

proceed to liquidate a personal injury claim alleging non-compliance with building codes, mold issues and negligence. The Debtor filed a response [DE#186] to the Motion for Relief. The Motion for Relief was granted. The debtor has also filed an objection to Claim No. 42 filed by D'Andola.

Claimants, Eric Welling and Crystal M Kolleda-Welling filed a Motion for Partial Summary Judgment on the Issue of Liability [DE#187] regarding Claim #112 alleging damages for personal injuries, pain and suffering and attorneys fees for water stains and dampness, faulty stucco problems and window defects. The Debtor has filed a Second Objection to Claim #112 [DE#144]. The matter is being referred to mediation.

The Debtor has filed its monthly Debtor-in-Possession Report in a timely manner through out this Chapter 11 proceeding.

## (2) EXECUTORY CONTRACTS

Article VI of the Plan entitled "Executory Contracts" indicates that all Executory Contracts and unexpired leases of the Debtor not expressly assumed prior to the confirmation date, or not at the confirmation date the subject of a pending application to assume, shall be deemed to be rejected.

(a) Clear Channel Outdoor – contract for outdoor bulletin advertising  This is a contract for outdoor bulletin advertising. The Debtor will Pay this creditor $1,500.00. in full on the Effective Date, to satisfy the terms of the contact.

(b) GE Capital, equipment lease agreement for a Ricoh Aficio MP copier terminated on October 20, 2010. Debtor will pay the buyout pursuant to the terms of the lease and will retain the Ricoh copier.

(c) Joseph Hanlon, residential real property agreement dated July 21, 2010 for the

- 9 -

premises at 6083 NW Helmsdale Way, Lot 146.

(d)  Pitney Powers Purchase Power – lease of postage meter.

(e)  Premium Assignment Corp, premium finance agreement for insurance premiums on spec units.

(3) OBJECTIONS TO CLAIMS AND PREFERENCE ANALYSIS

Pursuant to the Plan, the Debtor may object to any scheduled claim or Proof of Claim filed against the Debtor.  Such an objection shall preclude the consideration of any claims as "allowed" for the purposes of timely distribution in accordance with the Plan.  There are no Preferences or voidable transfers which the Debtor can pursue.

OBJECTIONS TO CLAIMS

The Claims Bar date expired on October 26, 2010.  The Debtor filed the following objections to claims:

(a)  Claim #63 filed by Comerica Bank and Claim #64 filed by Comerica Bank [DE#79].  The Debtor objected to these secured claims as Comerica Bank obtained relief from the Court to foreclosure.  The objection was sustained without prejudice to this claimant pursuing its collateral to obtain in rem judgment against the property or take any action with respect to its mortgages in the properties only and does not permit the bank to seek or obtain in personam relief against the debtor.

(b)  Claims #4, #5, #7, #8, #9, #13, #28 of the St Lucie County Tax Collector. [DE#80]These claims are for 2010 property taxes on the properties subject to the mortgages of Comerica Bank. [DE#80]  These claims were stricken without prejudice to the creditor pursuing its collateral.

(c)  Claim #50 of Page Mrachek Fitzgerald, Claim #89 ʻof Sunflower Maintenance; Claim #9 of Joseph and Mary Anne Virone [DE#81].  #50 was allowed in the amount of $100,000; claim #89 was allowed in the amount of $1,100.00, and Claim #9 was stricken.

(d)  Claim #51 of Heartwood 88 LLC, Claim #75 of Donna Haigh and Doreen Haigh, Claim #80 of St James Golf Club, Claim #113 of PPF Holdings [DE#90].  #113 was allowed as a secured tax certificate claim I the amount of $4,661.47;  #51 was Stricken; #75 was allowed in the amount of $68,396.50; claim #76 was allowed in the amount of $68,396.50, #80

- 10 -

was stricken.

      (e)      Claim #112 of Eric M Welling & Crystal Kolleda [DE#93] This matter is being set for mediation.

      (f)      Scheduled Claims – Better Business Bureau, Arbogas Enterprises, Clear Channel [DE#94].  All claims were stricken for failure to file a proof of claim

      (g)      Scheduled Claims of Davis Gross, Joyce W. Rogers, Kevin Albrecht, Mary Anne Benes, Melissa Siringo, Mr. and Mrs. Schilling [DE#95].  These claims were stricken.

      (h)      Scheduled claims of Mark J. Tremblay, H. James and Gail M. Logan, Malisa Woods, Masterplan Properties LLC, Rose M. Moussa, Universal Insurance Company [DE#96] These claims were stricken.

      (i)      Scheduled claim of Andrew Davis [DE#97]  this claim was stricken

      (j)      Claim #31 of St Lucie Tax Collector, Claim #42 of Nick and Melissa D'Andola, Claim #65 of Citibank South Dakota, Claim #77 of Satchel LLC, Claim #79 of Brett Carothers [DE#98].  Claim #42 will be scheduled for mediation.  Claim #31, #65 and #77 were stricken.

      (k)      Claim #39 of the Internal Revenue Service [DE#117].  Claim allowed as priority in amount of $1,846.68 and unsecured $237.65

      (l)      Claim #115 of H. James and Gail M. Logan [D##118].  Claim stricken.

      (m)      Claim #116 filed by St James Homeowners' Association [DE#119]

      (n)      Claim #72 filed by Investments 2234 LLC [DE#122].  Allowed as secured tax certificate claim in the amount of $18,645.88.

      (o)      Scheduled Claim of Christine Morgan [DE#123], this claim has been paid. This claim was stricken.

      (p)      Objection to Claims #104, 105, 106,107,108, 109, 110, 111 filed by drywall claimants.  These claims were stricken for failure to respond to the objection to claim.

      (q)      Objection to Claim #90 of Domenico & Marie Barilla regarding a dispute with the purchase of their home by Welling.  Objection still pending

      Additional objections to claims may be filed.

## (4) OFFICERS AND DIRECTORS

      The following individuals shall hold the position indicated as an officer of the Reorganized Debtor, at the compensation stated, subject to change by action of the Board of Directors. They are insiders.

|  | Salary |  |
|---|---|---|
| President: Paul Rhodes | $ -0- | per year |
| V. President, Gerald Rosenblum | $ -0- | per year |
| Asst. Vice President: Sally Larson | $ -0- | per year |

## ARTICLE IV

### Treatment of Claims and Interests Under the Plan

4.1    General.   All payments under this Plan shall commence ten days after confirmation unless otherwise provided in the Plan.

4.2   Administrative Claims.   All Allowed Administrative Claims shall be paid:

(a)  in full on the Effective Date or, if such Claim is objected to, the Date of a Final Order allowing any such Administrative Claim;

OR

(b)  upon such other terms as may be agreed to between the Debtor and each such Administrative Claimant.

Administrative costs are estimated to be approximately $50,000.00 above 0what has been paid to Furr and Cohen as a retainer, and approximately $16,000.00 for payment to accountant Sommers, Everhart & Kohler, P.A.

All case related payments for services, costs, and expenses will be subject to Court approval.  All payments shall be from the business operations.  The Debtor shall continue to sell its properties to make payments under the Plan.

All fees due under 11 U.S.C. § 1129(a)(12) shall be paid as required by 28 U.S.C. § 1930.

Tax Claims.- Allowed Tax Claims, estimated by management to total $1,846.68 for the Internal Revenue Service and $465.43 for the Department of Revenue, (total $2,312.11), specified in 11 U.S.C. Section 507(a)(8) shall be paid in full at confirmation.

Class 1.  Class 1 is the Claim of Comerica Bank in the amount of $1,119,976.33 representing mortgages on seven properties.  Comerica Bank obtained relief from the bankruptcy court to foreclose on the properties and the Debtor has no further obligation to Comerica Bank. There will not be any payments to Comerica Bank.

Class 2.  Class 2 is the allowed secured claim of Wells Fargo Equipment Finance, which is secured by a modular office complex, including attachments and accessories, from

- 12 -

which the Debtor conducts its business, in the amount of $7,543.06 as of February 28, 2011.  The Debtor has been making adequate protection payments of $2,218.54 per month beginning October 1, 2010 and shall continue making monthly payments to Wells Fargo Equipment Finance in the amount of $2,218.54 per month until the claim has been paid in full pursuant to the terms of the Equipment Lease Purchase Agreement.  When all payments have been paid, the Debtor will get title to the modular trailers.

      **Class 3.**  Class 3 is the allowed secured claim of <u>GE Capital Solutions</u> which is secured by the equipment lease for a Richo Aficio MP C3500SPF Copier, lease #7218802006 in the amount of $3,327.84.  The lease term ended on October 20, 2010.  The debtor will pay a buy out of the equipment and retain the equipment

      **Class 4.**  Class 4 is the Allowed Secured Claim of <u>Premium Assignment </u>Corp. which is secured by interest in any unearned premiums regarding insurance on spec units pursuant to a premium finance agreement.   During the pendency of the Chapter 11 the debtor made monthly payments of $623.19 per month.  The amount due has been paid in full and there will be no distribution to Premium Assignment Corp

      **Class 5.**  Class 5 is the Allowed Secured claim of Clear Channel Outdoor which is secured by a contract for outdoor bulletin advertising.  The Debtor will pay Clear Channel Outdoor $1,500.00 in full satisfaction of the contract on the Effective Date.

      **Class  6.**  Class 6 are the Allowed Secured claims of <u>St Lucie Tax Collector</u> for estimated 2010 real estate taxes on Lots 97, 98D, 70, 96, 98, 99, 100, 66, 3, 95E, 106E, 114, 115,117, 146, 153, 158, 160, 168, 39, 40, 41, 42, 43, 44, 45D and 164 totaling $96,926.86.  These 2010 taxes will be paid in full when they become due.

      **Class 7.**  Class 7 claims are the allowed secured claims of Tax Certificate holders for 2008 and 2009 real estate taxes on various properties in the approximate amount of $154,879.18.  These Tax Certificate holders will be paid in full on the Effective Date by making payment to the St Lucie County Tax Collector, who in turn will mail a check to the certificate holder within seven (7) days.

      **Class 8.**  Class 8 are the Allowed Secured claims of <u>St. James Golf Club </u> for unpaid Homeowners' Association Assessments for properties located at 421 NW Sheffield, 511

N.W. Dover, 309 NW Sheffield, 455 NW Dover, 419 NW Stafford, 429 NW Sheffield and 314 NW Sheffield in the amount of $3,325.00. The allowed HOA Assessment claims will be paid in full on the Effective Date.

**Class 9.** Class 9 are the contingent drywall claims filed against the Debtor as reflected on the exhibit to the Disclosure Statement. These claimants will be allowed to collect any damages they have against the insurance coverage of the Debtor and to be paid only to the extent of any insurance coverage.

**Class 10.** Class 10 claims are the Allowed Claims of General Unsecured Creditors. The General Unsecured Creditors are as described in Exhibit "B", and include certain specific Plaintiff claims. Those include the following:

a.        claim of Domenico & Marie Barilla [Claim #90] in the case known as Universal Insurance Company vs Nick D'Andola and Melissa D'Andola Individually and as Guardians for Nick D'Andola, Jr., Rose M. Moussa and Princeton Homes, Case No. 56-2009 CA 004388 pending in the Circuit Court of the 19th Judicial Circuit, St Lucie County, FL

b.        the claim of Donna E. Haigh [Claim #75] regarding Lot 147 and Donna and Doreen Haigh [Claim #76] regarding Lot 159 regarding a contract dispute in the counterclaim pending in the case known as Princeton Homes Inc vs Donna E. Haigh and Doreen L. Haigh, and Princeton Homes, Inc. vs. Donna E. Haigh, Circuit Court of the 19th Judicial Circuit, St. Lucie County, Florida. These have been settled and allowed as general unsecured claims in the amount of $68,396.50 each

c.        the claim of Eric Welling and Crystal Welling [Claim #112], which is a late filed claim. Pre-petition a lawsuit known as Eric M. Welling and Crystal M. Kolleda-Welling vs Domenico Barilla, Maria Barilla and Princeton Homes, Inc., Case No. 562009CA002318 pending in the Circuit Court of 19th Judicial Circuit, St Lucie County, Florida alleging water damages and window defects, violation of building codes and negligent construction and repairs in a home they purchases from Mr. and Mrs. Barilla. The lawsuit was stayed by the filing of this Chapter 11 proceeding. The court entered an Order determining that Welling could file a late-filed claim, which they did and the Debtor has filed an objection to that claim and has filed a Second Objection to Claim [DE#144]. Claimants filed a response to the Objection [DE#188]. It is pending mediation.

d.      the claim of Nick and Melissa D'Andola [Claim #42]   Pre-petition a lawsuit known as Nick D'Andola and Melissa D'Andola As Guardians for Nick D'Andola, Jr. vs. Rose M. Moussa and Princeton Homes, Inc., Case No. 562008 CA 010693 pending in the Circuit Court of the 19th Judicial Circuit, St Lucie County, FL and a lawsuit known as Universal Insurance Company vs Nick D'Andola and Melissa D'Andola Individually and as Guardians for Nick D'Andola, Jr., Rose M. Moussa and Princeton Homes, Case No. 56-2009 CA 004388 pending in the Circuit Court of the 19th Judicial Circuit, St Lucie County, FL.  This matter is pending mediation.

e.      W. Brett Carothers [Claim #79]   Princeton Homes Inc vs Masterplan Properties, LLC, W. Brett Carothers, and Malisa Woods, Case No. 562010CA002816, Circuit Court of the 19th Judicial Circuit, St Lucie County, FL regarding a mortgage foreclosure on Lot 165, the regarding a contract dispute on the purchase of a home.  The Debtor has filed an objection to this claim as the Claimant did execute a note and mortgage and is liable under the note and mortgage to the debtor. This claim is being settled for no payments.

f.      The claim of Paul Rhodes, President and one of the shareholders of the Debtor – Claim #73 in the amount of $8,562,578.43, for monies lent to the Debtor, as reflected on the Debtor's income tax filings over the years.

Allowed unsecured creditors shall be paid on a pro rata basis, the liquidated amount of the Debtor's assets.  As the Debtor liquidates its assets during the term of the Plan, it shall quarterly pay the net liquidation amount pro rata to these creditors.

**Class 11.**  Class 11 claims are the claims of interest holders.  Interest Holders will receive nothing under the Plan because of the liquidation of the Debtor's collateral leaves no business to be operated.

Payment of U.S. Trustee's Fees:  Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the entry of the order confirming this Plan, for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.  The Debtor, as a reorganized Debtor, shall further pay the United States Trustee the appropriate sum required pursuant to 28

U.S.C. §1930(a)(6), until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another Chapter under the United States Bankruptcy Code, and the reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicting all the cash disbursements from the relevant period.

**ARTICLE V**

**CLAIMANTS AND IMPAIRED INTEREST HOLDERS**

Claimants and Interest Holders entitled to vote under the Plan must affirmatively act in order for the Plan to be confirmed by the Court.  According to the Debtor's Plan, Class 10 are "impaired" classes within the meaning of § 1124 of the Bankruptcy Code.  These classes, accordingly, must vote to accept the Plan in order for the Plan to be confirmed without a cram down.  A Claimant who fails to vote to either accept or reject the Plan will not be included in the calculation regarding acceptance or rejection of the Plan.  A ballot to be completed by the holders of Claims and/or Interests is included herewith.  Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length.  The Plan will be confirmed by the Bankruptcy Court and made binding upon all Claimants and Interest holders if (a) with respect to impaired Classes of Claimants, the Plan is accepted by holders of two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in each such class voting upon the Plan and (b) with respect to classes of Interest Holders, if the Plan is accepted by the holders of at least two-thirds (2/3) in amount of the allowed interests of such class held by holders of such interests.  In the event the requisite acceptances are not obtained, the Bankruptcy Court may, nevertheless, confirm the Plan if it finds that the Plan accords fair and equitable treatment

- 16 -

to any class rejecting it.  Your attention is directed to Section 1129 of the Bankruptcy Code for details regarding the circumstances of such "cram down" provisions.

## ARTICLE VI

### ANALYSIS OF THE PLAN VS. LIQUIDATION ANALYSIS

All payments as provided for the in the Debtor's Plan shall be financed by Debtor's cash on hand.  The Debtor shall continue to sell its properties to make payments under the Plan.

The Debtor has filed its monthly operating statements since the filing of the bankruptcy petition and copies of the first page of each report are attached hereto as Exhibit "A".

Attached hereto marked Exhibit "B" is a table showing all of the claims of Debtor in each classification.

Management believes that its Plan of Reorganization provides full value for all claims of creditors and is in the best interest of creditors.

As with any Plan, an alternative would be a conversion of the Chapter 11 case to a Chapter 7 case and subsequent liquidation of the Debtor by a duly appointed or elected trustee. In the event of a liquidation under Chapter 7, the following is likely to occur:

(a) An additional tier of administrative expenses entitled to priority over general unsecured claims under § 507(a)(1) of the Bankruptcy Code would be incurred.  Such administrative expenses would include Trustee's commissions and fees to the Trustee's accountants, attorneys and other professionals likely to be retained by him for the purposes of liquidating the assets of the Debtor;

(b)  Substantially less than market value will be realized for the Debtor's accounts

- 17 -

receivable, inventory, equipment, materials and supplies;

(c)  Further claims would be asserted against the Debtor with respect to such matters as income and other taxes associated with the sale of the assets, and the inability of the Debtor to fulfill outstanding, contractual commitments and other related claims.

(d)  A liquidation analysis containing a balance sheet is attached as Exhibit "C".

Predicated upon the foregoing, it is management's opinion that the liquidation value of the Debtor would be insufficient to make payments to any class of creditors other than the secured creditors, leaving no monies available for the claims of any other classes of creditors such as general unsecured creditors.

The Court has previously set October 26, 2010 as the Claims Bar Date.  All indebtedness scheduled by the Debtor as not disputed, contingent or unliquidated or any indebtedness set forth in a properly executed and filed Proof of Claim shall be deemed an Allowed Claim unless the same is objected to, and the objection thereto is sustained by the Court.

## ARTICLE VII

## RISK ANALYSIS

The Debtor believes there is minimal risk to the creditors if the Plan is confirmed. There are few hard assets which could be dissipated.  The on going operation of the business will generate the most funds for payment to creditors.

## ARTICLE VIII

## POST-CONFIRMATION REORGANIZED DEBTOR'S STRUCTURE

A.  Equity Structure

Upon the Effective Date, the Debtor shall continue to operate.

- 18 -

B.  Board of Directors

Upon the Effective Date, the Debtor's Board of Directors shall remain unchanged.

C.  Officers

Upon the Effective Date, the Debtor's officers shall remain unchanged.

D.  Retention of Assets and Operations

Upon the Effective Date, the Debtor shall retain all of its assets and continue to operate its business.  Upon the Effective Date, the Debtor shall be free to operate and to perform any and all acts authorized by its Articles of Incorporation without further Order from the Court.


**ARTICLE IX**

**CONFIRMATION BY CRAM DOWN**

The Debtor reserves the right, in the event that impaired classes reject the Plan, to seek confirmation of the Plan if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.

The Plan is deemed fair and equitable if it provides (i) that each holder of a Secured Claim retains its lien and receives deferred cash payments totalling at lest the allowed amount of its claim, of a value, as of the effective date of the Plan, of at least the value of its secured interest in the property subject to his lien, and (ii) that each holder of an unsecured claim receives property of a value equal to the allowed amount of its claim, or no holder of a junior claim receives or retains any property.

- 19 -

# ARTICLE X

## MISCELLANEOUS PROVISIONS

A.    Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution on account of such claim shall not be paid in accordance with the provisions of the Plan until such claim has become an Allowed Claim by a final Order.  If allowed, the claim shall be paid on the same terms as if there had been no dispute.

B.    At any time before the Confirmation Date, the Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of § 1122 and § 1123 of the Bankruptcy Code.  After the Debtor files a modification with the Bankruptcy Court, the Plan, as modified, shall become the Amended Plan.

C.    At any time after the Confirmation Date, and before substantial consummation of the Plan, the Debtor may modify the Plan with permission of the Court so that the Plan, as modified, meets the requirements of § 1122 and §1123 of the Bankruptcy Code.  The Plan, as modified under this paragraph, shall become the Amended Plan.

D.    After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

11.3  Governing Law.  Except to the extent that the Bankruptcy Code or Florida Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

11.4  Severability.  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

11.5  Regulatory Approval.  No regulatory approval is necessary for the confirmation of this Plan.

DATED: 3|8|11

PRINCETON HOMES, INC.

BY _Sally Larson_
SALLY LARSON,
V. President, Secretary

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

FURR AND COHEN, P.A.
Attorney for Debtor
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
(561) 395-0500/(561)338-7532 fax

By _Robert C. Furr_
ROBERT C. FURR, ESQ.
Florida Bar No. 210854
E-mail: rfurr@furrcohen.com

15

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING  7/28  AND ENDING  8/31

Name of Debtor:  Princeton Homes, Inc.          Case Number  10-31773-EPK
Date of Petition:  July 28, 2010

|  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | 9448 13 (a) | 9448 13 (b) |
| 2. RECEIPTS: | | |
| A. Cash Sales | | |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | | |
| B. Accounts Receivable | 637.45 | 637.45 |
| C. Other Receipts (See MOR-3) | 13769.08 | 13769.08 |
| (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | 14406.53 | 14406.53 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | 23854.66 | 23854.66 |
| 5. DISBURSEMENTS | | |
| A. Advertising | | |
| B. Bank Charges | | |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 798.74 | 798.74 |
| F. Inventory Payments (See Attach. 2) | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I. Office Supplies | 560.35 | 560.35 |
| J. Payroll - Net (See Attachment 4B) | 3602.53 | 3602.53 |
| K. Professional Fees (Accounting & Legal) | | |
| L. Rent | | |
| M. Repairs & Maintenance | | |
| N. Secured Creditor Payments (See Attach. 2) | | |
| O. Taxes Paid - Payroll (See Attachment 4C) | 2187.18 | 2187.18 |
| P. Taxes Paid - Sales & Use (See Attachment 4C) | | |
| Q. Taxes Paid - Other (See Attachment 4C) | | |
| R. Telephone | 60.07 | 60.07 |
| S. Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | | |
| U. Utilities | 6095.99 | 6095.99 |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses (See MOR-3) | 596.69 | 596.69 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 13901.55 | 13901.55 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 9953.11 (c) | 9953.11 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This 16th day of Sept , 2010          _Nancy Lai_ (Signature)

(a) This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.
(b) This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.
(c) These two amounts will always be the same if form is completed correctly.

MOR-2

Exhibit "A"

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING ___9/1/10___ AND ENDING ___9/30/10___

Name of Debtor:   Princeton Homes, Inc.          Case Number   10-31773-EPK
Date of Petition:    July 28, 2010

|  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | 9953¹¹ (a) | 9448¹³ (b) |
| 2. RECEIPTS: | | |
| A. Cash Sales | | |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | | |
| B. Accounts Receivable | 137¹³ | 774.58 |
| C. Other Receipts (See MOR-3) | 16758.30 | 30527.38 |
| (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | 16895.43 | 31301.96 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | 26848.54 | 40750.09 |
| 5. DISBURSEMENTS | | |
| A. Advertising | 298.95 | 298.95 |
| B. Bank Charges | 9.90 | 9.90 |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 1710.40 | 2569.14 |
| F. Inventory Payments (See Attach. 2) | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I. Office Supplies | 255.05 | 815.40 |
| J. Payroll - Net (See Attachment 4B) | 3652.54 | 7205.07 |
| K. Professional Fees (Accounting & Legal) | | |
| L. Rent | | |
| M. Repairs & Maintenance | | |
| N. Secured Creditor Payments (See Attach. 2) | 428.70 | 428.70 |
| O. Taxes Paid - Payroll (See Attachment 4C) | 863.71 | 3050.89 |
| P. Taxes Paid - Sales & Use (See Attachment 4C) | | |
| Q. Taxes Paid - Other (See Attachment 4C) | | |
| R. Telephone | 115.48 | 175.55 |
| S. Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | | |
| U. Utilities | 558.05 | 6654.64 |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses (See MOR-3) | 3299.83 | 3986.52 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 11298.21 | 25199.76 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 15550.33 (c) | 15550.33 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This __18__ day of __Oct__, 2010          _Nancy Adair_ (Signature)

(a) This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b) This figure will not change from month to month.  It is always the amount of funds on hand as of the date of the petition.

(c) These two amounts will always be the same if form is completed correctly.

MOR-2

Exhibit "A"

Case 10-31773-EPK   Doc 84   Filed 11/16/10   Page 2 of 33

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING 10/1/10 AND ENDING 10/31/10

Name of Debtor: Princeton Homes, Inc.
Date of Petition: July 28, 2010

Case Number 10-31773-EPK

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | 15550.33 (a) | 9448.10 (b) |
| 2. RECEIPTS: | | |
| A. Cash Sales | | |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | | |
| B. Accounts Receivable | 150.62 | 924.60 |
| C. Other Receipts (See MOR-3) | 14484.88 | 45012.20 |
| (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | 14634.77 | 45936.80 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | 30185.17 | 55384.93 |
| 5. DISBURSEMENTS | | |
| A. Advertising | 4995 | 34890 |
| B. Bank Charges | 93.55 | 103.45 |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 1208.54 | 3772.68 |
| F. Inventory Payments (See Attach. 2) | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I. Office Supplies | 142.31 | 957.71 |
| J. Payroll - Net (See Attachment 4B) | 3002.52 | 10809.59 |
| K. Professional Fees (Accounting & Legal) | | |
| L. Rent | | |
| M. Repairs & Maintenance | | |
| N. Secured Creditor Payments (See Attach. 2) | 3027.94 | 3451.64 |
| O. Taxes Paid - Payroll (See Attachment 4C) | 958.54 | 4004.43 |
| P. Taxes Paid - Sales & Use (See Attachment 4C) | | |
| Q. Taxes Paid - Other (See Attachment 4C) | | |
| R. Telephone | 22.21 | 197.76 |
| S. Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | 650. | 650. |
| U. Utilities | 467.10 | 7121.74 |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses (See MOR-3) | 874.15 | 4870.67 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 11091.81 | 36291.57 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 19093.36 (c) | 19093.36 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This 15 day of Nov, 2010

_Harry Lau_
(Signature)

(a)This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.
(b)This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.
(c)These two amounts will always be the same if form is completed correctly.

MOR-2

*Exhibit "A"*

Case 10-31773-EPK   Doc 120   Filed 12/16/10   Page 2 of 30

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING ___11/1/10___ AND ENDING _11/30/10_

Name of Debtor: ___Princeton Homes, Inc.___

Date of Petition: ___July 28, 2010___

Case Number ___10-31773-EPK___

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | 19,093.36 (a) | 9,448.13 (b) |
| 2. RECEIPTS: | | |
| A. Cash Sales | | |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | | |
| B. Accounts Receivable | 470.85 | 1,395.45 |
| C. Other Receipts (See MOR-3) | 68,537.15 | 113,549.35 |
| (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | 69,008.' | 114,944.80 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | 88,101.36 | 124,392.93 |
| 5. DISBURSEMENTS | | |
| A. Advertising | 946.93 | 1,295.85 |
| B. Bank Charges | 68.93 | 172.38 |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 1,690.54 | 5,468.22 |
| F. Inventory Payments (See Attach. 2) | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I. Office Supplies | 706.08 | 1,663.29 |
| J. Payroll - Net (See Attachment 4B) | 5,403.80 | 16,211.39 |
| K. Professional Fees (Accounting & Legal) | | |
| L. Rent | | |
| M. Repairs & Maintenance | | |
| N. Secured Creditor Payments (See Attach. 2) | 2,623.24 | 6,074.88 |
| O. Taxes Paid - Payroll (See Attachment 4C) | 1,430.32 | 5,434.75 |
| P. Taxes Paid - Sales & Use (See Attachment 4C) | | |
| Q. Taxes Paid - Other (See Attachment 4C) | | |
| R. Telephone | 1,056.01 | 1,253.77 |
| S. Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | | 650.— |
| U. Utilities | 400.29 | 7,522.03 |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses (See MOR-3) | 23,740.30 | 28,610.87 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 38,066.46 | 74,358.03 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 50,034.90 (c) | 50,034.90 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This _15th_ day of _Dec_, 20_10_.

_____
(Signature)

(a) This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.

(b) This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.

(c) These two amounts will always be the same if form is completed correctly.

MOR-2

Exhibit "A"

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING 12/1/10 AND ENDING 12/31/10

Name of Debtor: Princeton Homes, Inc.
Date of Petition: July 28, 2010

Case Number 10-31773-EPK

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | 5003490 (a) | 9449.13 (b) |
| 2. RECEIPTS: | | |
| A. Cash Sales | | |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | | |
| B. Accounts Receivable | 42.27 | 1437.72 |
| C. Other Receipts (See MOR-3) | 137283.41 | 250832.76 |
| (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | 137325.68 | 252270.48 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | 187360.58 | 261718.61 |
| 5. DISBURSEMENTS | | |
| A. Advertising | 881.72 | 2177.57 |
| B. Bank Charges | 85.00 | 257.98 |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 6719.65 | 12187.77 |
| F. Inventory Payments (See Attach. 2) | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I. Office Supplies | 208.52 | 1942.31 |
| J. Payroll - Net (See Attachment 4B) | 3602.53 | 19813.92 |
| K. Professional Fees (Accounting & Legal) | | |
| L. Rent | | |
| M. Repairs & Maintenance | 948.- | 948.- |
| N. Secured Creditor Payments (See Attach. 2) | 4860.78 | 10935.86 |
| O. Taxes Paid - Payroll (See Attachment 4C) | 1420.32 | 6865.07 |
| P. Taxes Paid - Sales & Use (See Attachment 4C) | | |
| Q. Taxes Paid - Other (See Attachment 4C) | | |
| R. Telephone | 218.24 | 1472.61 |
| S. Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | | 650.- |
| U. Utilities | 174.70 | 7096.75 |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses (See MOR-3) | 5034.80 | 36645.77 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 24234.76 | 98599.79 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 163125.82 (c) | 163125.82 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This 17th day of Jan, 2011.

_____
(Signature)

(a) This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.

(b) This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.

(c) These two amounts will always be the same if form is completed correctly.

MOR-2

Exhibit "A"

### SCHEDULE OF RECEIPTS AND DISBURSEMENTS
FOR THE PERIOD BEGINNING __1\1\11__ AND ENDING __1\31\11__

Name of Debtor: __Princeton Homes, Inc.__                Case Number __10-31773-EPK__
Date of Petition: __July 28, 2010__

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | 163125.82 (a) | 9448.13 (b) |
| 2. RECEIPTS: | | |
| A. Cash Sales | | |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | | |
| B. Accounts Receivable | 154.⁻ | 1501.72 |
| C. Other Receipts (See MOR-3) | 148,521.49 | 297042.98 |
| (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | 148,675.49 | 400945.97 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | 311,801.31 | 410294.10 |
| 5. DISBURSEMENTS: | | |
| A. Advertising | 49.95 | 2227.52 |
| B. Bank Charges | 67.64 | 325.62 |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 1109.24 | 13292.01 |
| F. Inventory Payments (See Attach. 2) | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I. Office Supplies | 856.72 | 2799.08 |
| J. Payroll - Net (See Attachment 4B) | 3605.17 | 23429.09 |
| K. Professional Fees (Accounting & Legal) | | |
| L. Rent | | |
| M. Repairs & Maintenance | 422.98 | 1300.98 |
| N. Secured Creditor Payments (See Attach. 2) | 2218.84 | 13154.10 |
| O. Taxes Paid - Payroll (See Attachment 4C) | 1353.83 | 8218.92 |
| P. Taxes Paid - Sales & Use (See Attachment 4C) | | |
| Q. Taxes Paid - Other (See Attachment 4C) | | |
| R. Telephone | 1378.66 | 2850.67 |
| S. Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | 1050.00 | 1300.⁻ |
| U. Utilities | 146.70 | 7843.43 |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses (See MOR-3) | 8228.43 | 41854.22 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 20097.90 | 118600.69 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 291703.41 (c) | 291703.41 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This __18th__ day of __Feb__, 20__11__.                _Jerry Lac_ (signature)
                                                         (Signature)

(a) This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.

(b) This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.

(c) These two amounts will always be the same if form is completed correctly.

MOR-2                                    _Exhibit "A"_

## EXHIBIT "B"

| CLASS | CREDITOR | CLAIM NO | AMOUNT OF CLAIM |
|---|---|---|---|
| P | Dept of Revenue | S | -0- |
| P | IRS WT/FICA  - 6/30/10 | 39 | 1,846.68 |
| P | St Lucie Tax Coll –(09 Personal Prop) | S | 465.43 |
| 1 | Comerica Bank | 63/64 | STRICKEN |
| 2 | Wells Fargo Equipment Fin (modular trailers) | 62 | 7,543.06 |
| 3 | GE Capital Solutions | 88 | 3,327.84 |
| 4 | Premium Assignment Corp | S | Paid |
| 5 | Clear Channel Outdoor(billboard) buyout | S | 1,500.00 |

CLASS 6

| CLASS | CREDITOR | CLAIM NO | AMOUNT OF CLAIM |
|---|---|---|---|
| 6 | St Lucie Tax Coll (09--511 NW Dover) (Lot 66D) | 1 | 709.20 |
| 6 | St Lucie Tax Coll (10--6113 NW Kendra) (Lot 97) | 22 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—455 NW Dover) (Lot 98D) | 35 | 4,658.13 |
| 6 | St Lucie Tax Coll (10—419 Stratford Ln) (Lot 70) | 38 | 4,385.37 |
| 6 | St Lucie Tax Coll (10—6109 Kendra Ln) (Lot 96) | 21 | 4,080.02 |
| 6 | St Lucie Tax Coll (10--6117 Kendra Ln) (Lot 98) | 23 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—6121 Kendra Ln) (Lot 99) | 24 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—6125 Kendra Ln) (Lot 100) | 25 | 4,626.04 |
| 6 | St Lucie Tax Coll (10—511 NW Dover) (Lot 66) | 33 | 4,257.94 |
| 6 | St Lucie Tax Coll (10—309 Sheffield) (Lot 3) | 20 | 3,732.74 |
| 6 | St Lucie Tax Coll (10—429 Sheffield) (Lot 103E) | 36 | 4,818.36 |
| 6 | St Lucie Tax Coll (10—314 Sheffield) | 34 | 4,795.06 |

- 23 -

| | | | |
|---|---|---|---|
| | (Lot 95E) | | |
| 6 | St Lucie Tax Coll (10—421 Sheffield) (lot 106E) | 37 | 4,827.52 |
| 6 | St Lucie Tax Coll  (10—6120 Argyll Ln) (Lot 114) | 12 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—6116 Argyll Ln) (Lot 115) | 26 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—6108 Argyll Ln) (Lot 117) | 11 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—6083 Helmsdale) (Lot 146) | 27 | 4,626.04 |
| 6 | St Lucie Tax Coll (10—6123 Helmsdale) (Lot 153) | 6 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—6945 Helmsdale) (Lot 157) | 29 | 4,070.87 |
| 6 | St Lucie Tax Coll (10—6149 Helmsdale) (Lot 158) | 10 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—6157 Helmsdale) (Lot 160) | 2 | 4,080.02 |
| 6 | St Lucie Tax Coll (10—6195 Helmsdale) (Lot 168) | 30 | 4,070.87 |
| 6 | St Lucie Tax Coll (10—6150 Cullen Way) (Lot 39) | 14 | 297.53 |
| 6 | St Lucie Tax Coll (10—6146 Cullen Way) (Lot 40) | 15 | 297.53 |
| 6 | St Lucie Tax Coll (10—6142 Cullen Way) (Lot 41) | 16 | 297.53 |
| 6 | St Lucie Tax Coll (10—6138 Cullen Way) (Lot 42) | 17 | 297.53 |
| 6 | St Lucie Tax Coll (10—6134 Cullen Way) (Lot 43) | 18 | 297.53 |
| 6 | St Lucie Tax Coll (10—6130 Cullen Way) (Lot 44) | 19 | 297.53 |
| 6 | St Lucie Tax Coll (10—4436 Dover Ct) (Lot 45D) | 32 | 683.32 |
| 6 | St Lucie Tax Coll (10—6179 Helmsdale) (Lot 164) | 3 | 4,080.02 |

<u>CLASS 7</u>

| | | | |
|---|---|---|---|
| 7 | Tax Certificates: | | |
| 7 | GL Funding (lot 45) | S | 804.26 |
| 7 | Cost Coast Tax Lien (lot 146) | 41 | 5,275.26 |
| 7 | Heartwood 36 LLC (lot 103) | 59 | 5,493.66 |
| 7 | Heartwood 46 LLC (lot 98) | 60 | 4,655.22 |
| 7 | Heartwood 48 LLC (lot 3)(2008) | 53 | 5,573.91 |
| 7 | Heartwood 48 LLC (lot 3)(2009) | 58 | 4,260.86 |
| 7 | Heartwood 88 LLC (lot 106) | 56 | 6,904.76 |
| 7 | Heartwood 88 LLC (lot 66) | 52 | 6,145.06 |
| 7 | Heartwood 88 LLC (lot 98) | 55 | 6,727.84 |
| 7 | Heartwood 88 LLC (Lot 95) | 54 | 6,763.80 |
| 7 | Heartwood 88 LLC (lot 70) | 57 | 6,549.89 |
| 7 | Heartwood 92-1 LLC (Lot 99) | 61 | 4,655.22 |
| 7 | Hoyt C. Murphy Trust (lot 45) | 43 | 1,316.67 |
| 7 | Investments 2234 LLC | 72 | 18,645.88 |
| 7 | (lots 114,117,153,158) | | |
| 7 | Luca 2 LLC (lot 96, 97,98,99,100,168) | 114 | 6,220.96 |
| 7 | Neal Keys (lot 39)(2008) | 48 | 636.97 |
| 7 | Neal Keys (lot 40)(2008) | 46 | 636.97 |
| 7 | Neal Keys (lot 41)(2008 | 45 | 636.97 |
| 7 | Neal Keys (lot42)(2008) | 44 | 636.97 |
| 7 | Neal Keys (lot 43)(2008) | 49 | 636.97 |
| 7 | Neal Keys (lot 44)(2008) | 47 | 636.97 |
| 7 | PPF Holdings III, (lot 115)(2009) | 93 | 4,661.97 |
| 7 | PPF Holdings III (lot96)(2009) | 99/113 | 4,661.97 |
| 7 | PPF Holdings III (lot 97) (2009) | 95 | 4,661.97 |
| 7 | PPF Holdings III (lot 157)(2009) | 92 | 4,651.08 |
| 7 | PPF Holdings III (lot 168)(2009) | 96 | 4,651.08 |
| 7 | PPF Holdings III (lot 106)(2009) | 98 | 5,510.32 |
| 7 | PPF Holdings III (lot 66)(2009) | 103 | 4,863.51 |
| 7 | PPF Holdings III (lot 98)(2009) | 100 | 5,317.95 |
| 7 | PPF Holdings III (lot 95)(2009) | 101 | 5,473.45 |
| 7 | PPF Holdings III (lot 70)(2009) | 97 | 5,008.22 |
| 7 | PPF Holdings III (lot 100)(2009) | 94 | 5,281.57 |
| 7 | Rajendra & Shila Gupta (lot 157)(2008) | 40 | 1,203.70 |
| 7 | Rohl Properties LLC(lot  39)(2009) | 71 | 566.40 |
| 7 | Rohl Properties LLC (lot 40)(2009) | 70 | 566.40 |
| 7 | Rohl Properties LLC (lot 41)(2009) | 69 | 566.40 |
| 7 | Rohl Properties LLC (lot42)(2009) | 68 | 566.40 |
| 7 | Rohl Properties LLC (lot 43)(2009) | 67 | 566.40 |
| 7 | Rohl Properties LLC (lot 44)(2009) | 66 | 566.40 |
| 7 | Salvatore Dililo (lot 103) (2008) | 78 | 1,718.92 |

CLASS 8

| | | | |
|---|---|---|---|
| 8 | St James Golf Club HOA (421 NW Sheffield) | 81 | 475.00 |
| 8 | St James Golf Club HOA (511 NW Dover) | 82 | 475.00 |
| 8 | St James Golf Club HOA (309 NW Sheffield) | 83 | 475.00 |
| 8 | St James Golf Club HOA (455 NW Dover) | 84 | 475.00 |
| 8 | St James Golf Club HOA (419 NW Strafford) | 85 | 475.00 |
| 8 | St James Golf Club HOA (429 NW Sheffield) | 86 | 475.00 |
| 8 | St James Golf Club HOA (314 NW Sheffield) | 87 | 475.00 |

Class 9:

| | | | |
|---|---|---|---|
| 9 | Daniel & Joan Campbell (Drywall) | 104 | these drywall |
| 9 | David & Pamela Joseph (drywall) | 105 | claims have been |
| 9 | Paul Theberge & M Borteau (Drywall &PI) | 109 | stricken against the |
| 9 | Frank & Rosemarie Gumina (Drywall) | 110 | Debtor, without |
| 9 | Jeffrey & Monica Segnello (Drywall) | 106 | prejudice to these |
| 9 | John Lonergan Sr (Drywall) | 111 | claimants pursuing |
| 9 | Joseph & Ellisa Sciarrone (Drywall) | 107 | insurance coverage or |
| 9 | Paul & Lisa Myers (Drywall) | 108 | claims against third parties |

UNSECURED:  Class 10:

| | | | |
|---|---|---|---|
| 10 | IRS  - Penalty | 39 | 237.65 |
| 10 | Builders Insurance (workers Comp) | S | Paid |
| 10 | Builders Insurance (Gen Liability) | S | 5,404.62 |
| 10 | Golf Club at St James (cart rental) | 74 | 17,862.60 |
| 10 | Page Mrachek Fitzgerald (fees) | 50 | 100,000.00 |
| 10 | Sunflower Maintenance | 89 | 1,100.00 |
| 10 | St. James Homeowners Assoc Construction claim –) | 116 | 350,000.00  Obj Pend hearing 3-24-11 |
| 10 | Domenico & Marie Barilla (See #112 – Dispute with Welling) | 90 | unknown     (CUD) |
| 10 | Donna E. Haigh Lot 147 | 75 | 68,396.50 |
| 10 | Donna & Doreen Haigh Lot 159 | 76 | 68,396.50 |
| 10 | Eric Welling (damages, injury) | 112 | 250,000.00  Obj Pend M S J by Creditor hearing 3-3-11 |

| | | | |
|---|---|---|---|
| 10 | Nick & Melissa D'Andola (lawsuit) | 42 | 1,000,000  Obj pend ResponseDE#168 |
| 10 | W. Brett Carolthers (lawsuit) | 79 | 93,249.83 Obj pend hearing 3-24-11 |
| 10 | Paul Rhodes | 73 | 8,562,578.43 |

STRICKEN CLAIMS:

| | | | |
|---|---|---|---|
| S | Joseph & Mary Ann Virone | 91 | Stricken |
| | Clear Channel Outdoor(billboard) | S | Stricken |
| | Arbogas Enterprises (FJ-Cash Bond) | S | Stricken |
| | Better Business Bureau | S | Stricken |
| | Citibank | S | stricken |
| | Malisa Woods (lawsuit-foreclosure) | S | stricken |
| | Masterplan Properties (lawsuit) | S | stricken |
| | Rose M. Moussa (lawsuit) | S | stricken |
| | Universal Ins Company (lawsuit D'andola Moussa) | S | stricken |
| | Andrew Davis (lawsuit – settled) | S | stricken |
| | Mark J. Tremblay (Contract Disp) | S | stricken |
| | H. James Logan and Gail Logan | 115 | stricken |
| | St James Golf Club HOA | 80 | stricken |
| | Satchel LLC (lot 149)(2009) | 77 | stricken |
| | St Lucie Co Tax Collector | 4,5,7,8,9,13,28 | stricken |
| | St Lucie Tax Collector | 31 | stricken |
| | Christine Morgan | S | stricken |
| | David Gross (Drywall) | S | stricken |
| | Joyce W. Rogers (Drywall) | S | stricken |
| | Kevin Albrecht (Drywall) | S | stricken |
| | Mary Anne Benes (Drywall) | S | stricken |
| | Melissa Allison Siringo (Drywall) | S | stricken |
| | Mr. and Mrs. Schilling (Drywall) | S | stricken |
| 7 | Heartwood 88 LLC (505 Waverly Cir) | 51 | stricken |

## EXHIBIT "C"

### PRINCETON HOMES, INC.

## LIQUIDATION ANALYSIS

| ASSETS: | VALUE: |
|---|---|
| Real Property | $ 3,915,200 |
| Cash on hand | $ 162,352 |
| Purchase Money Mortgages | $ 682,994 |
| Total | $ 4,760,546 |
| 20% cost to liquidate for carry & expenses | $ 952,109 |
| Net Liquidation Value | $ 3,808,436 |